# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TARIQ M., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    Case No. 18-CV-592-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner, Social Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tariq M. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I. Standard of Review

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 61-year-old male, applied for Title II and Title XVI benefits on July 23, 2015, alleging a disability onset date of November 18, 2014. R. 224-231. Plaintiff claimed that he was unable to work due to disorders including right shoulder, back pain, "can't stand," and "can't read and write." R. 246. Plaintiff's claims for benefits were denied initially on October 27, 2015, and on reconsideration on February 4, 2016. R. 147-155; 158-163. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on August 3, 2017. R. 33-69. The ALJ issued a decision on October 2, 2017, denying benefits and finding Plaintiff not disabled because he was able to perform other work existing in significant numbers in the national economy. R. 12-28. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018, and that he had not engaged in substantial gainful activity since his alleged onset date of November 18, 2014. R. 18. The ALJ found that Plaintiff had the following severe impairments: partial thickness tear of the right supraspinatus tendon and mild acromioclavicular

2

joint arthropathy of the right shoulder and mild degenerative disc disease of the lumbar spine. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. R. 19-20. Prior to making a step-four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and/or carry, push and/or pull, up to 50 pounds occasionally with his left arm and 15 pounds occasionally with his right arm. He can lift and/or carry, push and/or pull, up to 25 pounds frequently with his left arm and 7 ½ pounds frequently with his right arm. He can stand and/or walk up to 6 hours in an 8-hour workday with the usual breaks, and sit for 6 to 8 hours in an 8-hour workday with the usual breaks. He can only occasionally climb ladders, ropes and scaffolds and occasionally stoop. The claimant can occasionally reach slightly above his head with his right arm at or slightly above 90 degrees. The claimant cannot fully extend his right arm above his head.

R. 20. The ALJ found that Plaintiff was unable to perform any past relevant work.[1] R. 26. The ALJ found at step five that Plaintiff acquired the transferrable skills of money handling and customer service, and could perform other work of "cashier/checker." R. 26-27.[2] The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 27. The ALJ concluded this position existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III. Issues**

Plaintiff raises three issues on appeal: (1) the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence; (2) the ALJ failed to properly consider Plaintiff's subjective

---

[1] The ALJ found Plaintiff had the following past relevant work: (1) cashier/checker, light, SVP-3, DOT # 211.462-014; (2) bench assembler, light, occasionally at medium, SVP-2, DOT # 706.684-022; (3) automobile mechanic, medium, SVP-7, DOT # 620.261-010; and (4) tire changer, heavy, SVP-3, DOT # 915.684-010.

[2] As explained below, this step-five finding is not clearly supported by the VE's testimony.

3

complaints; and (3) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered his decision. ECF No. 14. For the reasons explained below, the Court reverses the decision based on the first allegation of error and does not reach the remaining errors.[3]

IV. Analysis

Plaintiff contends that the ALJ's assessment of his physical work-related limitations, as reflected in the RFC, are not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ's lift/carry exertional findings – namely, that Plaintiff can occasionally lift and/or carry up to 50 pounds with his left arm and 15 pounds with his right arm, and can frequently lift and/or carry up to 25 pounds with his left arm and 7.5 pounds frequently with his right arm – "are simply bare conclusions without any of the required legal analysis," and that the ALJ failed to "weigh and link the evidence to his RFC." ECF No. 14 at 5 (citing *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). Plaintiff contends that his maximum RFC should be "light and not medium," and that this impacted the ALJ's step-five analysis. ECF No. 14 at 6.

A. **Relevant Medical Records and VE Testimony**

Plaintiff injured his shoulder and back at work and saw providers at OU Physician's Clinic for his pain complaints in September 2014, November 2014, and March 2015. R. 351-353, 358-361, 366-369. At the November 2014 visit, Thomas Kupiec, M.D., gave Plaintiff a letter stating that he could not lift more than 15 pounds with his right arm for the foreseeable future. R. 535. In December, 2014, Plaintiff saw Anne May, M.D., who provided opinions that Plaintiff was unable to return to work at that time due to a work related injury, and that Plaintiff was

---

[3] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal. Because the Court finds other grounds for reversal, the Court does not reach the Appointments Clause issue.

4

"temporarily totally disabled as he is not able to perform his usual work duties as a result of his injuries." R. 348, 377. Imaging of Plaintiff's right shoulder and low back in January 2015 showed a likely partial thickness tear of the supraspinatus tendon and mild joint arthropathy in the shoulder, and disc bulges at two levels and mild facet arthropathy at two levels in the low back. R. 346-347.

During the hearing, the ALJ had the following exchange regarding lifting:

Q: Okay, so how much can you lift?
A: Well I can lift up to less than 15 pounds. Up to 15 pounds.
ATTY: Okay.
ALJ: Well that's with your –
ATTY: Right.
ALJ: – right arm. How about with your left arm? How much can you lift there?
CLMT: *Well I don't because I have to lift it – I'm right-handed so –*
ALJ: Well, but you can use both hands when you lift.
CLMT: Yes. So I can lift –
*ALJ: Can you lift as much with your left hand as you can with your right hand?*
*CLMT: Yes. Sometime I have to do both hands to lift anything, but sometime I lift – maybe I lift 20 pound, more, you know.*
ALJ: Okay.

R. 49-50 (emphases added).

During the hearing, the ALJ first issued a hypothetical with a 30 pound occasionally, 15 pound frequently lifting restriction. R. 54-55. After some clarification and further exchange, the ALJ ultimately gave the VE the following hypothetical:

> He's got unlimited lifting ability with his left arm. That should be 50 pounds. He can lift 15 pounds with his right arm – occasionally 15 pounds with his right arm. No, I'm sorry. Yeah, 15 pounds occasionally with his right arm, 50 pounds occasionally with his left. Frequently he can lift five pound – no, we'll make it seven and a half – seven and a half pounds with his right, and 25 pounds with his left.

R. 63.

5

The VE found Plaintiff could not perform past relevant work as a bench assembler, because that job required "bilateral lifting" of parts up to thirty pounds. R. 64. Although it is unclear, it appears the VE also stated that Plaintiff could not perform past relevant work as cashier/checker, either as performed or as generally performed. *See* R. 65. The ALJ then asked for the total number of cashier/checker jobs in the national economy, which is 271,000. R. 65-66. However, in the Court's view, the VE did not make any clear or specific finding that Plaintiff could perform the cashier/checker job at the levels identified by the VE. R. 66-67.

The ALJ then asked if any of the skills from the past cashier/checker job transferred to other jobs, and the VE stated "not at the level in your RFC for Hypothetical No. 1." R. 66. At the "light or sedentary" level, the VE testified that the skills of "money handling and customer service" transferred to other occupations and found two specific examples. Specifically, the VE found Plaintiff could perform the alternate skilled jobs such as money counter, SVP-3, DOT code 211.467-014, 16,000 in the national economy, and check cashier, sedentary, SVP-3, DOT code 211.462-026, 60,000 in the national economy. R. 67.[4] The ALJ did not rely on either of these jobs in his decision but instead found at step five that Plaintiff could perform the job of "cashier/checker" (with no citation to a DOT code), after that had been rejected as past relevant work. R. 26-27.

### B. ALJ's RFC and Step-Five Conclusions Are Not Adequately Explained and Unsupported by Substantial Evidence

The Court finds the ALJ's decision to be unclear and not supported by the record for two principal reasons. First, the ALJ's finding that Plaintiff could perform medium work is in error,

---

[4] During the hearing, the VE and ALJ have an exchange about the cashier/checker position as a "separate job" from Plaintiff's past relevant work. R. 34. It is unclear, from this exchange, whether the VE intended to testify that a cashier/checker was an alternative job available to Plaintiff in the national economy.

because the ALJ utilized a "per arm" lifting analysis that is non-sensical and not supported by the regulations. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). The regulation does not divide lifting and/or carrying per arm, and that is not generally how people carry items at this exertional level. Lifting and/or carrying items of these weights is contemplated as bilateral lifting. In this case, Plaintiff was right-hand dominant. For the ALJ to conclude that he could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds with only his left arm strains credulity, and there is no medical evidence or subjective testimony supporting such a finding. While Plaintiff did testify that, in prior jobs, he lifted aircraft parts, tires, and store merchandise up to fifty pounds, he did not testify that he did so only with his left arm. To conclude Plaintiff ever did the lifting with his left arm only, and then could continue doing so at his current age and after his right shoulder injury, ignores the reality of Plaintiff's testimony and abilities and is not supported by objective or other medical evidence.

The ALJ gave "little weight" to state agency doctors' opinions that Plaintiff could perform only light work, because they "did not have the benefit of the claimant's testimony that he had a history of successfully lifting up to 50 pounds occasionally." R. 25. Again, this successful history was prior to Plaintiff's shoulder injury while working as a mechanic, and there is no indication that Plaintiff lifted these heavy items with only his left arm.

The Commissioner contends that none of Plaintiff's doctors "assessed specific limitations greater than those found by the ALJ" and that the ALJ "adopted Dr. Kupiec's November 18, 2014, opinion that Plaintiff could not lift more than 15 pounds with his right arm for the foreseeable future." ECF No. 16 at 4. However, the Court does not view the ALJ's RFC as wholly consistent with Dr. Kupiec's recommendation. There is no medical or logical support for the proposition that

7

a 64-year old with a 15-pound restriction on his dominant arm can nonetheless engage in medium work, including occasional 50-pound lifting and frequent 25-pound lifting with the other arm.

Second, the ALJ's step four and step five analyses are internally inconsistent and not supported by substantial evidence, particularly in light of the VE's testimony. The ALJ's decision states that Plaintiff cannot perform his past relevant work as "cashier/checker" DOT #211.462-014, light SVP-3, as actually or generally performed. R. 26. As explained above, this appears to be consistent with the VE's testimony. But then the ALJ concludes Plaintiff could perform the alternate job of "cashier/checker" at step five, without listing a specific DOT code. R. 27. This is an unexplained internal inconsistency. Further, although the exchange is confusing, the VE did not clearly testify that Plaintiff could perform the cashier/checker job as an alternate job at step five. Although the VE gave the number of 271,000 jobs in the national economy, the ALJ failed to properly elicit testimony to determine Plaintiff's vocational adjustment levels according to the regulations with respect to the cashier/checker job. *See Jensen v. Barnhart*, 436 F.3d 1163, 1167 (10th Cir. 2005) (explaining that "the ALJ carefully led the VE through the regulatory requirements for transferability of skills for a person of advanced age"); *see also* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4) ("If you are closely approaching retirement age (age 60 or older) and you have a severe impairment that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment . . . ."). Instead, the only clear testimony that includes the necessary discussion of transferrable skills and Plaintiff's age, is that Plaintiff could perform the jobs of money counter and check cashier. R. 66-67. The ALJ did not adopt these findings or mention these two jobs in his step-five

analysis. The Court finds that the step-five findings include legal errors and are not supported by record evidence.

### C. Harmless Error Doctrine Does Not Apply

Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, the RFC's lifting restrictions could impact whether Plaintiff was deemed to be capable of "medium" or "light" work, as argued by Plaintiff, which could impact his classification under the grids. The step four and five findings, particularly read in conjunction with the VE testimony, are internally inconsistent and unclear. The Court would have to engage in speculation and post hoc justification to determine what job Plaintiff might be deemed able to perform and whether a reasonable factfinder may ultimately find Plaintiff disabled. Accordingly, the Court finds remand proper.

## V. Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 2nd day of April, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**